CHURCHWELL *et al. v.* WHITE *et al.*

(*Jackson*, April Term, 1937.)

Opinion filed June 10, 1937.

544

R. R. HAGGARD, of Waynesboro, J. A. SHELTON, of Adamsville, JOE C. DAVIS, of Lexington, and P. M. HARBERT, of Savannah, for appellants.

JERE I. GALBRAITH, of Henderson, and EDWIN DEFORD and Ross & Ross, all of Savannah, for appellees.

MR. SPECIAL JUSTICE ALAN M. PREWITT delivered the opinion of the Court.

The complainants below, appellants here, filed their original bill in the chancery court of Hardin county on August 31, 1936. The bill was filed by a large number of taxpayers and residents of Hardin county against Dewey G. White, and E. E. Mabry, county judge, seeking an

injunction to prohibit the said White from being inducted into the office of county superintendent of public instruction of that county, and to enjoin the said county judge from paying to the said White the salary provided by law for such office. By amendment to the bill, J. C. Johnson, the incumbent in the office of county superintendent, was made a party complainant in the case. The bill alleged that in the August election in 1936, the said J. C. Johnson, the then incumbent, and Dewey G. White, were the opposing candidates for county superintendent, and that the said J. C. Johnson received 1,901 votes, and the defendant Dewey G. White received 1,806 votes. The election returns, however, certified by two of the three election commissioners, certified that Johnson received 1,443 votes and White received 1,462 votes, a majority for White of 19 votes. The original bill further complains that the said two election commissioners unlawfully and without any authority in law refused to count the returns in certain precincts in Hardin county, on account of the fact that certain statutory provisions were not complied with, such as the returns being sent in unsealed, and the poll lists and tally sheets not certified, and other acts wherein the election law was not complied with.

It was sought in the bill to have said election declared illegal and void, and that the said J. C. Johnson be entitled to hold said office until a valid election could be held. A *fiat* for an injunction was issued by the county judge of Lawrence county and an injunction issued, and, by the same, defendant White was enjoined from presenting himself for induction into the office or from presenting himself to be qualified for the position of county superintendent. On the motion to dissolve and upon the demurrer of the defendants, the chancellor held that the

motion to dissolve was well taken, sustained the same, and dismissed the bill, the chancellor being of the opinion that the bill and prayer presented an election contest only and that the chancery court was without jurisdiction to entertain such proceedings, and to grant an injunction as prayed, and further finding an election contest had been instituted in the county court of Hardin county, by the said J. C. Johnson against the defendant White, contesting the election of said White to said office.

The question, therefore, is whether the purpose of the bill presents an election contest. As before stated, two of the election commissioners met, canvassed the returns, and issued a certificate of election to White. The bill sets out that there were certain irregularities claimed in the matter of the returns, and that the said election commissioners should not have thrown out certain boxes, and that in reality, when the ballots themselves were counted, the said Johnson would have been the successful candidate.

If the facts presented show an election contest, then, under our holdings, the chancery court had no jurisdiction. *Hagan* v. *Henry*, 168 Tenn., 223, 224, 76 S. W. (2d), 994, 995, and authorities therein cited.

▮▮ As stated in *Hagan* v. *Henry*, *supra*, that prior to the case of *State ex rel.* v. *Bratton*, 148 Tenn., 174, 253 S. W., 705, 708, our reports contain no exception to the rule that an injunction may not issue in aid of an election contest to restrain the execution of the will of the voters as certified by the election officers. The apparent exception in the Bratton Case was in a proceeding in which, "Statements of the petition and answer, without more, settle the question of title to the office, and the right of the incumbent to hold over." No questions of

fact were involved, as in this case, and the injunction granted on the pleadings was, in effect, a permanent and not a mere temporary injunction. The presumption is in favor of the validity of an election held under the forms of law. This presumption stands for a conclusion until rebutted by proof upon a contest.

██ In the present case the defendant White was the holder of a certificate of election, signed by two of the election commissioners, and valid on its face, and, in order to set aside this certificate, under the facts presented, it was necessary to institute a contest, and under our holdings White could not be deprived of the office by an injunction.

"As in cases of contest, the office ought to be filled by one of the claimants while the action is pending, it frequently becomes a matter of importance to determine what evidence is sufficient to show which one should hold the possession of the office until the question of the right is settled. And the form of action to determine the right of an incumbent to hold an office depends upon this question. It is, however, well settled that when it is made the duty of certain officers to canvass the votes and issue a certificate of election in favor of the successful candidate, a certificate of such officers, regular upon its face, is sufficient to entitle the person holding it to the possession of the office during an action to contest the right, and is conclusive as to third parties and in collateral matter." 10 Am. & Eng. Encyc. Law (2 Ed.), 761.

This rule that the holder of an election certificate is entitled to the possession of the office pending a contest of his election is consistently followed in other jurisdictions. *Harrison* v. *Stroud*, 129 Ky., 193, 110 S. W., 828,

33 Ky. Law Rep., 653, 16 Ann. Cas., 1050; *DeShazo* v. *Davis*, 157 Va., 517, 162 S. E., 320, 81 A. L. R., 614.

As was said in *Hagan* v. *Henry, supra*, by MR. JUSTICE SWIGGART: "Conceding the premise that the certificate of election is *prima facie* title to the office, there does not seem to be any reasonable argument against the rule that this *prima facie* title should prevail until overthrown by final adjudication in the election contest. The holder of the certificate, regularly issued, has the apparent legal right. He, and not the previous incumbent claiming the right to continue in office without color of authority, is the *de facto* officer, and as such is entitled to whatever aid the courts may render in the protection of his possession until the *de jure* officer is ascertained in the election contest. . . . Such rule is consistent with the often repeated refusal of this court to concede to courts of chancery the power to hear and determine election contests through the medium of injunction proceedings."

*State ex rel.* v. *Grindstaff*, 144 Tenn., 554, 234 S. W., 510, was a *mandamus* proceedings involving the right to the office of recorder of the town of Elizabethton.

In that case, Chief Justice GREEN pointed out that a *mandamus* suit, however, may incidentally involve the determination of an election contest and that the chancery court had jurisdiction of such a suit, *Lawrence* v. *Ingersoll*, 88 Tenn., 52, 12 S. W., 422, 6 L. R. A., 308, 17 Am. St. Rep., 870, but in the *Grindstaff Case, supra*, this court reversed the decree of the chancellor in so far as the injunction was sustained, but affirmed the decree as to the *mandamus*, and sent the case back to the lower court for a determination of the rights of the parties on the alternative writ of *mandamus*.

 The exceptions to the general rule seem to be in cases where the question involved is settled upon the face of the record. This was true in *State ex rel.* v. *Bratton, supra,* and *State ex rel.* v. *Hammons,* 166 Tenn., 469, 63 S. W. (2d), 660.

In the record before us, it would require the taking of proof in the court below to determine issue of fact and to determine irregularities, if any, in the holding of the election, the manner of certifying the returns, and other irregularities complained of.

We are of the opinion that, under the holding of this court, the record presented is an election contest, and the decree of the chancellor in denying the temporary injunction and dismissing the bill was correct and is therefore affirmed with cost.